UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
98 JUL -1 PM 1:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 1 1998

| | | |
|---|---|---|
| ROBERT MULLINS, | ) | CV97-S-1897-S |
| MICHAEL G. MURKS, | | CV97-S-2011-S |
| MILLARD SHELTON, | ) | CV97-S-2012-S |
| JAMES R. WILLIAMS, | | CV97-S-2013-S |
| JERRY CHANDLER, | ) | CV97-S-2015-S |
| NOONAN W. GREENE, | | CV97-S-2016-S |
| THOMAS LARRY BAILEY, | ) | CV97-S-2143-S |
| JERRY GOTHARD, | | CV97-S-2287-S |
| EDWARD J. SMART, | ) | CV97-S-2314-S |
| FRANK N. SPEER, | | CV97-S-2315-S |
| MARC W. SHORES, | ) | CV97-S-2322-S |
| TIMOTHY L. MANSELL, | | CV97-S-2325-S |
| RICKY S. COATS, | ) | CV97-S-2464-S |
| BOBBY MASSEY, | | CV97-S-2480-S |
| HALBERT PUTNAM, | ) | CV97-S-2482-S |
| TROY TUCKER, | | CV97-S-2509-S |
| LANNY W. SMITH, | ) | CV97-S-2758-S |
| BARBARA G. HOVATER, | | CV97-S-2809-S |
| SHARIN A. HILL, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| CRAVEN CROWELL, | ) | |
| JOHNNY H. HAYES, | | |
| WILLIAM H. KENNOY, | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

This is an action under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 et seq. Plaintiffs' positions with the Tennessee Valley Authority were eliminated on September 30, 1996, as part of a reduction-in-force. Plaintiffs allege their positions were eliminated because they were "regarded as disabled," and, TVA

sought to deprive them of federal workers' compensation benefits. Defendant Craven Crowell is the Chairman of TVA, and defendants Johnny H. Hayes and William H. Kennoy are members of the TVA Board of Directors.

The action is before this court on two motions for summary judgment. Defendants seek partial summary judgment against all plaintiffs except Sharin A. Hill, to the extent plaintiffs attempt to state claims for discriminatory transfer or "nonselection" for jobs. Defendants also seek summary judgment as to <u>all</u> claims of plaintiff Sharin A. Hill, because she allegedly failed to timely file her complaint following a final decision by the TVA Equal Opportunity Compliance Office. Upon consideration of the pleadings, briefs, and evidentiary submissions, this court concludes both motions are due to be granted.

### I. MOTION FOR PARTIAL SUMMARY JUDGMENT

**A. Facts**

Plaintiffs are former employees of the Tennessee Valley Authority who suffered on-the-job injuries prior to 1990, while working in the line and scope of their assigned duties for TVA. Each plaintiff applied for, and was granted workers' compensation benefits pursuant to the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 *et seq.* (Cutshaw declaration ¶ 2.) Plaintiffs' respective injuries allegedly "prevented [each of] them from performing the regular duties of the jobs they [each] held at the time [each was] injured ...." (Complaint at 3.)

TVA commenced a so-called "Nuclear Reemployment Initiative" ("REIN") in 1990, "to provide for the reemployment of 80 former Nuclear Power employees who had incurred work-related injuries and who were receiving FECA benefits but were not disabled from working." (Cutshaw declaration ¶ 3.) Under the REIN program, plaintiffs were offered positions at various TVA nuclear power facilities, and funding was provided by TVA's Nuclear Corporate Human Resources department, rather than the individual power plants. (Id.) Each plaintiff accepted the position offered to him or her under the REIN program. (Id.)

Budget reductions were imposed on TVA's Nuclear Corporate Human Resources department in 1994 and 1995, however. As a consequence, "plaintiffs and the other employees in the REIN program were informed that their respective positions had been identified as 'at risk' and were targeted for surplus." (Id. ¶ 4.) Thereafter, plaintiffs were transferred to the TVA Services Organization ("TVAS"). (Id.)

> TVAS was created in 1994 as a temporary organization designed to give employees whose positions were eliminated an opportunity to search for other work and/or to develop additional skills which might help to move career employees, like plaintiffs, from their previous occupations or positions to new occupations or positions for service within and outside of TVA. This transition sometimes involved training and learning new skills. In other cases, TVAS utilized an employee's current skills and knowledge to aid one or more organizations within TVA.

3

(*Id.* ¶ 5.) During their tenure with TVAS, plaintiffs retained "their current schedule and grade (and salary) in the same competitive area and level." (*Id.* ¶ 4.) None of the plaintiffs sought counseling from TVA's Equal Employment Opportunity office, or filed a formal administrative complaint regarding the transfer to TVAS.

Plaintiffs were notified on July 24, 1996, that their positions in the REIN program would be eliminated, effective September 30, 1996, as part of a reduction-in-force caused by a shortage of funds. (Talley second declaration exhibit D.) Thereafter, each plaintiff made contact with a TVA Equal Employment Opportunity counselor. Those counselors prepared separate precomplaint counseling reports for each complainant, but each report contained a common claim: plaintiffs were the victims of disability discrimination. (Talley second declaration exhibit A.) Plaintiffs lodged no other claims of discrimination, and they were not counseled regarding any other claim of discrimination. (*Id.*) TVA engaged in a conciliation process with the separate plaintiffs, but did not grant any relief.

Thereafter, each plaintiff filed a formal administrative complaint with TVA's Equal Opportunity Compliance Office, alleging disability discrimination in the conduct of the reduction-in-force. (*Id.* exhibit B.) The Equal Employment Opportunity Compliance Office accepted plaintiffs' RIF claims for formal processing and

4

investigation, but did not accept any other claims (notably claims for discriminatory transfer and nonselection). (*Id.* exhibit C.)

The Equal Employment Opportunity Compliance Office investigated plaintiffs' formal administrative complaints, obtained sworn statements from each plaintiff and responsible managers, and collected pertinent documents. (*Id.* ¶ 6.) After compiling an investigative report, the Equal Opportunity Compliance Office requested that plaintiffs and their respective attorneys provide any additional, relevant information which might not have been collected. (*Id.*) Plaintiffs did not submit any additional information, or assert additional claims. (*Id.*)

Before the director of the Equal Opportunity Compliance Office could issue a final decision on plaintiffs' respective complaints, however, each elected to commence the present actions. (*Id.* ¶ 11.) Such actions terminated the processing of their administrative complaints and no final administrative decisions were issued.

Although plaintiffs' administrative complaints only claimed discrimination due to the reduction-in-force, their consolidated complaints contain additional charges. For example,

> 9. While employed in the REIN Program many of the plaintiffs applied for a number of non REIN jobs with TVA. Although they were qualified, and could have done the jobs for which they applied, TVA did not select any of the plaintiffs (or any other disabled worker for any of the jobs.
>
> ...

5

> 12. After creating TVAS, TVA transferred all or substantially all of its REIN employees to TVAS. First TVA sent them at risk notices telling them that their specially classified REIN jobs were at risk. Then TVA transferred them to TVAS. Few, if any, of the former REIN employees were to be given meaningful work at TVAS, and none were to find jobs with other TVA employing units. Their special job classifications remained the same and they continued to be carried on special retention rosters containing only similarly classified disabled employees. Ultimately, TVA would terminate all of the former REIN employees it transferred to TVAS and few, if any, would see their OWCP benefits restored to pre-REIN levels.

(Consolidated complaint at 6-7.) Defendants move for summary judgment, because such nonselection and transfer claims were not submitted to the TVA Equal Opportunity Compliance Office for consideration.

**B. Discussion**

Defendants claim plaintiffs never consulted TVA Equal Opportunity Compliance counseling officers regarding their nonselection and transfer claims and, therefore, plaintiffs did not comply with 29 C.F.R. § 1614.105. That regulation provides in pertinent part:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

6

Plaintiffs respond by acknowledging they "have not set forth separate discrete claims for transfer and nonselection." (Plaintiffs' brief at 6.) Rather, they claim to have "set forth only one claim, which is that they each have been discriminated against in violation of the Rehabilitation Act...." (Id.[1]) Plaintiffs thus contend their claims are not for specific acts such as discriminatory "termination," "transfer," or "nonselection," but generally for "a systematic policy of discrimination by TVA against OWCP employees, particularly with regard to seniority rights." (Id.) Plaintiffs thus claim they may recover damages for every discriminatory act in that alleged "systematic policy," under a "continuing violation" theory. (Id. at 6-8.) Plaintiffs' "continuing violation" argument discusses only the timeliness of their complaints, however. Plaintiffs present no argument on their complete failure to raise the nonselection or transfer claims in their respective filings with TVA's Equal Opportunity Compliance Office.

"The scope of a judicial complaint under Title VII [or, as in this case, the Rehabilitation Act of 1973] is limited to the acts of discrimination contained in the EEOC charge or claims 'like or related' to the claims raised in the charge." *Oliver v. Russell Corp.*, 874 F.Supp. 367, 371 (M.D. Ala. 1994); *see also Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987). The

---

[1]This court notes that plaintiffs have not stated claims for separate discriminatory acts, but merely allege they are the victims of "disparate treatment" and "disparate impact." (*See* consolidated complaint at 8-10.)

7

"like or related" rule also applies to plaintiffs who fail to raise claims of discrimination during a federal agency's administrative process. *See Greenlaw v. Garrett*, 59 F.3d 994 (9th Cir. 1994); *Chaney v. Rubin*, 986 F.Supp. 516 (N.D. Ill. 1997)(plaintiff who failed to raise claims during "mixed case appeal" could not raise them in district court).

Plaintiffs have not argued that their nonselection and transfer claims are "like or related" to the discriminatory termination claims lodged with the TVA Equal Opportunity Compliance Office. Plaintiffs further fail to provide any explanation of why they failed to raise those claims before that office. Accordingly, this court finds that plaintiffs' only claims are for the alleged discriminatory reduction-in-force, and defendants' motion for partial summary judgment is due to be granted.

## II. SHARIN A. HILL

### A. Facts and Procedure

Plaintiff Sharin Hill sought counseling with TVA Equal Opportunity Compliance Office following elimination of her position, and received a notice of her right to file a formal administrative complaint from her EOC counselor on October 9, 1996. Attached to that notice was a document entitled "RIGHTS OF COMPLAINANT," containing the following statements:

> If you are not satisfied with TVA's decision you may appeal it in writing within 30 calendar days after receipt to Director, Office of Federal Operations, Equal Employment Opportunity Commission ..., or you may file a

8

> civil action in an appropriate U.S. District Court within 90 calendar days after you receive TVA's final agency decision, IF YOUR COMPLAINT WAS BASED ON RACE, COLOR, RELIGION, SEX, NATION ORIGIN, OR HANDICAP.

(Plaintiff's exhibit 1 at 6.) Hill filed a formal administrative complaint with TVA on October 24, 1996.

When Hill's complaint was accepted on November 1, 1996, TVA informed her that her claim would be processed as a "mixed case complaint."

> A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address.

29 C.F.R. § 1614.302(a)(1). Hill's complaint was treated as a "mixed case complaint," because challenges to a reduction-in-force may be directly appealed to the Merit Systems Protection Board. See 5 U.S.C. §§ 7512(d), 7513(d). The "mixed case complaint" procedure also contemplated a 30 day period for filing suit, rather than the 90 day period of which Hill was first advised. TVA duly advised Ms. Hill of that fact.

> In its notice and acceptance of the RIF claim for processing and investigation, the EOC staff informed Ms. Hill that her RIF claim was "a 'mixed case' complaint and was directly appealable to the Merit Systems Protection Board (MSPB)." ...EOC further notified Ms. Hill that "the filing of [her] 'mixed case' complaint with the Equal Opportunity Compliance office prior to any appeal to the MSPB constitute[d] [her] election of the Tennessee Valley Authority's discrimination complaint process in lieu of an appeal to the MSPB." ... When such an election occurs

9

> with regard to "mixed case" complaints, after a full investigation, the Director of EOC issues a final decision without a hearing. After the issuance of a final decision, a "mixed case" complainant, such as Ms. Hill, would then have the option "to appeal the matter to the MSPB ... within 30 days of receipt" for a de novo hearing on all claims and issues ... or to "file a civil action as provided at § 1614.310(a)" within 30 days of receipt of the final decision. ...

(Talley declaration ¶ 4.)

Indeed, following the initial document enumerating the "RIGHTS OF COMPLAINANT," Sharin A. Hill was notified on three occasions that she would have thirty days to file an action in federal court. When her EOC complaint was accepted on November 1, 1996, Hill was notified:

> If you are dissatisfied with TVA's final decision, you may appeal the decision to the MSPB (and, in connection therewith, request a hearing before MSPB) **WITHIN 30 CALENDAR DAYS** of your receipt of TVA's decision on your complaint.
>
> In lieu of an appeal to MSPB, you may file a civil action in the appropriate United States District Court **WITHIN 30 CALENDAR DAYS** of your receipt of TVA's decision on your complaint.

(Talley declaration exhibit C at 3 (emphasis in original).)

The Equal Opportunity Compliance Office again advised Hill on March 24, 1997, that it had completed its investigation of her complaint, and requested any further relevant information. That notification also informed Hill of her post-decision rights:

> [Y]ou may appeal the matter to the MSPB at any time [after 120 days from the date of filing]; or you may file a civil action in the U.S. District Court WITHIN THIRTY (30) DAYS of receipt of the final agency decision but not both.

10

(*Id.* exhibit D at 2 (All Cap emphasis in original).)

When the director of the Equal Opportunity Compliance Office issued his final decision, finding no discrimination, Hill was once again fully informed of the time limits applicable to any further appeals:

> V. <u>APPEAL RIGHTS</u>
>
> This is a final decision of the Tennessee Valley Authority on your complaint of discrimination. If you are not satisfied with this decision, you have the following appeal rights:
>
>> You have the right to appeal the matter to the Merit Systems Protection Board (MSPB) within THIRTY (30) CALENDAR DAYS of receipt of this final agency decision. Any such appeal should be sent to:
>>
>>> U.S. Merit Systems Protection Board
>>> 401 W. Peachtree Street, NW, 10th Floor
>>> Atlanta, Georgia 30308
>>
>> You should use the enclosed MSPB appeal form.
>
>> In lieu of an appeal to the MSPB, you have the right to file a civil action in an appropriate U.S. District Court WITHIN THIRTY (30) CALENDAR DAYS of the receipt of this final agency decision. The proper defendants are the members of the TVA Board of Directors in their official capacity.

(*Id.* exhibit E at 5-6 (All Caps emphasis in original).)

Sharin Hill received the final decision on October 8, 1997, but her attorney received a copy six days before she did: *i.e.*, on October 2, 1997. (*Id.* ¶ 8.) Yet, Hill was not added as a plaintiff to this consolidated action until the filing of the

11

consolidated complaint on November 12, 1997: 35 days after <u>she</u> received TVA's final decision.

**B. Discussion**

**1. Plaintiff was required to file this action within 30 days**

Defendants argue that Sharin Hill's complaint must be dismissed, because she failed to file her complaint within 30 days of TVA's final decision.

> Employees pursuing relief through an EEO mixed case complaint may file a civil discrimination action in federal district court <u>within 30 days of a final decision by the agency</u> or after 120 days have passed without decision, but only if no appeal to the MSPB is pursued at that time.

*McAdams v. Reno*, 64 F.3d 1137, 1142 (11th Cir. 1995)(emphasis supplied). See also 29 C.F.R. § 1614.310(a), which provides:

> An individual who has a complaint processed pursuant to ... this subpart is authorized by 5 U.S.C. § 7702 to file a civil action in an appropriate United States District Court:
>
> (a) Within 30 days of receipt of a final decision issued by an agency on a complaint unless an appeal is filed with the MSPB.

Procedures for "mixed case" complaints are governed by 5 U.S.C. § 7702, which recognizes that a federal agency (such as TVA) or the Merit Systems Protection Board possesses initial jurisdiction over complaints of discrimination under § 501 of the Rehabilitation Act. When the discrimination complaint is placed before the agency, rather than the Merit Systems Protection Board, the agency is required to "resolve such matter within 120 days.

12

The decision of the agency in any such matter shall be a <u>judicially reviewable action</u> unless the employee appeals the matter to the Board ...." 5 U.S.C. § 7702(a)(2)(emphasis supplied). Judicial review of the agency's decision is governed by 5 U.S.C. § 7703(b)(2):

> (2) Cases of discrimination subject to the provisions of <u>section 7702</u> of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the <u>judicially reviewable action</u> under such section 7702. [emphasis supplied.]

Sharin Hill argues that the 30 day provision of § 7703(b)(2) does not apply to her claims, because that section makes no reference to the Rehabilitation Act. She claims that she is entitled to the 90 day period customarily afforded in Title VII actions.

Binding precedent establishes, however, that the enumeration of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Fair Labor Standards Act was merely intended to establish jurisdiction in the United States District Courts, rather than the Courts of Appeals. See *Wiggins v. United States Postal Service*, 653 F.2d 219, 220-21 (5th Cir. 1981)(plaintiff with Rehabilitation Act claim "may seek review of

13

[MSPB] decision only by filing an action in accordance with section 717(c) of the Civil Rights Act of 1964").[2]

This court thus finds that the final decision of TVA's Equal Opportunity Compliance Office was a "judicially reviewable action under Section 7702." 5 U.S.C. § 7703(b)(2). Sharon Hill accordingly was required to file her civil action "within 30 days after the date" she received that decision. Id. Her failure to do so renders her action untimely.

2. Equitable Tolling

Hill claims the statute of limitations should be equitably tolled, because the initial notice of "RIGHTS OF COMPLAINANT" indicated that she would be given 90 days to file suit. Hill contends she was "entitled to rely on the agency's initial communication, absent some affirmative action on the part of the agency to notify her that its earlier representations were incorrect." (Hill reply brief at 8.) Hill provides no authority for imposing such a duty on TVA. She also fails to discuss the three additional notices listed above.

"The burden is on the plaintiff to show that equitable tolling is warranted." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). Sharin Hill has not met her burden in this action. Although Hill initially received a form containing incorrect information, she was given three subsequent notices that she must

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

14

file her action in federal district court within 30 days of a final agency decision. She has presented no authority in which equitable tolling was permitted in such a situation, and this court is not persuaded that is should do so under the circumstances of this case.

### 3. Failure to follow procedures

Hill finally argues that her case should not be dismissed, because "TVA also failed to properly invoke 'mixed case' procedures." (Hill reply brief at 5.) She relies upon that portion of 29 C.F.R. § 1614.302(b) providing:

> An agency shall inform every employee who is the subject of an action that is appealable to the MSPB and who has either orally or in writing raised the issue of discrimination during the processing of the action of the right to file either a mixed case complaint with the agency or to file a mixed case appeal with the MSPB.

When Hill was notified by letter on October 9, 1996 of her right to file a complaint of discrimination, no reference was made to her right to file a "mixed case" complaint or appeal. Even so, Hill fails to demonstrate how that lack of notice contributed to her failure to file the present action within 30 days of TVA's final decision. Indeed, if Hill had filed a "mixed case appeal" with the Merit Systems Protection Board, she still would have been required to file this action within 30 days of the Board's decision. 5 U.S.C. § 7703(b)(1). This court thus concludes plaintiff Sharin E. Hill's complaint was untimely, and her claims are due to be dismissed.

15

## III. CONCLUSION

For the foregoing reasons, this court concludes both motions for partial summary judgment are due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this the 1st day of July, 1998.

_____
United States District Judge

16